[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Appellants Casa DiMario, Inc. and Andiross, Inc. ("the appellants") appeal the decision of the Director of the Rhode Island Department of Business Regulation ("DBR") that upheld the Town of Johnston's ("Town") decision to: (1) revoke the liquor license held by Casa DiMario, Inc.; and (2) deny any transfer of that license to Andiross, Inc.
For reasons set forth in this decision, this Court affirms the decision below.
 FACTS TRAVEL
Mario's Showplace is a restaurant with adult entertainment that is located in Johnston, Rhode Island and operates under a Class BV Full Liquor License.[1] Appellant Casa DiMario, Inc. owned and operated Mario's Showplace until July of 2001, at which time the assets of Casa DiMario, Inc. were purchased by appellant Andiross, Inc.
Prior to the actions underlying the instant appeal, and while Casa DiMario, Inc. was the owner and operator of Mario's Showplace, Casa DiMario, Inc. appeared before the DBR on a similar matter. In January of 1996, Mario's Showplace offered totally nude adult entertainment. At that time, the Town did not have any ordinance to regulate such entertainment. In February of 1996, however, the Town passed Ordinance 965, entitled "Nudity on premises where alcoholic beverages are offered for sale." Ordinance 965 prohibits owners and operators of establishments where alcoholic beverages are sold to permit a female to expose her breast at or below the areola. The Ordinance also prohibits such persons from permitting any persons to expose their genitals, pubic area, anus, anal cleavage, or anal cleft.[2]
In response to the enactment of Ordinance 965, Casa DiMario, Inc. filed suit in Superior Court by which it sought to enjoin the Town from enforcing Ordinance 965 against it. In March of 1996, the Superior Court issued a restraining order enjoining the Town from enforcing Ordinance 965. This restraining order remained in effect until October of 1997, at which time the Town Solicitor settled the case with Casa DiMario, Inc. The settlement provided that the Town would not enforce Ordinance 965 or any future adult entertainment ordinances against Casa DiMario, Inc.
In January of 1998, a new Town Solicitor filed a motion to vacate the settlement. A Superior Court restraining order prohibiting the Town from enforcing Ordinance 965 against Casa DiMario, Inc. remained in effect pending a trial on the merits. In November of 1998, the Superior Court granted a permanent injunction prohibiting the Town, on procedural grounds, from enforcing Ordinance 965. See Casa DiMario, Inc. v.Richardson, C.A. No. 96-1067, 1998 R.I. Super. LEXIS 19 (R.I. Super. Ct. 1998). That decision held that towns, pursuant to an amendment to R.I. Gen. Laws § 3-7-7.3,[3] had the authority to regulate entertainment at facilities holding Class B liquor licenses. Since Ordinance 965 was enacted in February of 1996, however, prior to the amendment to R.I. Gen. Laws § 3-7-7.3, the Court held that it was invalid and unenforceable.
In response to the Superior Court's decision, the Town, in December of 1998, enacted Ordinance 1057, which is almost identical to Ordinance 965.[4] Casa DiMario, Inc. refused to comply with Ordinance 1057 and continued to include full nudity in its adult entertainment. As a result of Casa DiMario, Inc.'s violations of Ordinance 1057, the Town, at a hearing in February of 1999, revoked Casa DiMario, Inc.'s liquor and adult entertainment licenses, but granted it the right to reapply for such licenses after a year.
Casa DiMario, Inc. appealed the revocation of its liquor license to the DBR. The DBR issued a stay of the license revocation pending a hearing, conditioned upon Casa DiMario, Inc.'s compliance with all laws including Ordinance 1057.
Casa DiMario, Inc. also filed suit in Superior Court to challenge the legality of Ordinance 1057. On February 5, 1999, the Superior Court granted a temporary restraining order to prohibit the Town from enforcing Ordinance 1057 against Casa DiMario, Inc. After a trial in March of 1999, however, the Superior Court denied Casa DiMario, Inc.'s request for a permanent injunction and instead upheld Ordinance 1057 as legal. Casa DiMario, Inc. appealed that ruling to the Rhode Island Supreme Court. The DBR stayed its hearing as to the revocation of Casa DiMario, Inc.'s license revocation pending appeal.
In December of 2000, the Supreme Court affirmed the legality of both Ordinance 965 and Ordinance 1057. It determined that Casa DiMario, Inc. had no grandfather rights that would allow it to avoid application to it of either R.I. Gen. Laws §3-7-7.3[5] or R.I. Gen. Laws § 5-72-2.[6] It further found that the Town was not estopped from applying Ordinances 965 or 1057 to Casa DiMario, Inc. See Casa DiMario, Inc. v.Richardson, 763 A.2d 607 (R.I. 2000).
In January of 2001, after the Supreme Court issued its decision upholding Ordinances 965 and 1057, the DBR lifted its earlier stay and heard the appeal of Casa DiMario, Inc. from the Town's decision to revoke its liquor license. In May of 2001, the DBR issued a decision that reduced the one-year license revocation to a fifty-three day suspension — the same amount of time that Casa DiMario, Inc. operated Mario's Showplace in violation of Ordinance 1057. See Casa DiMario, Inc. v. Town of Johnston,
LCA-JO-00-04 (May 2, 2001).
After serving its suspension, Casa DiMario, Inc. did not reopen Mario's Showplace. Rather, in July of 2001, Andiross, Inc. purchased the assets of Casa DiMario, Inc. Casa DiMario, Inc. and Andiross, Inc. are independent corporations and do not share any stockholders, officers, or employees.
In September of 2001, Andiross, Inc. filed with the Town an application seeking approval of the transfer to it of Casa DiMario, Inc.'s liquor license. Andiross, Inc. attempted to retrieve from the Town the physical liquor license that the Town had issued previously to Casa DiMario, Inc. After the Town informed Andiross, Inc. that a representative from Casa DiMario, Inc. (rather than Andiross, Inc.) had to pick up the license because the transfer application of Casa DiMario, Inc. was still pending, a representative of Casa DiMario, Inc. picked up the license. The Town represented to Andiross, Inc. that it could operate Mario's Showplace under Casa DiMario, Inc.'s license with Casa DiMario Inc.'s permission, as long as it operated the establishment in accordance with state and local law. Thus, on October 4, 2001, Andiross, Inc. reopened Mario's Showplace under Casa DiMario, Inc.'s liquor license and offered adult entertainment.
From that date forward, the Town's police frequented Mario's Showplace on a nightly basis in their official capacity. On October 18 and 21, 2001, only two weeks after Andiross, Inc. reopened Mario's Showplace, the police reported a myriad of violations of Ordinance 1057 as a result of their usual surveillance. Officers reported, for example, that they observed dancers wearing thongs and dancers accepting tips by pulling their thongs away from their anal cleavage and thus exposing the anal cleft. Furthermore, Detective Albert Faella reported that on October 18, 2001, he observed one dancer in the main room expose her breast and another dancer expose her breast while giving him a lap dance. Detective Robert Tefft reported that on October 18, 2001, a dancer exposed her bare breast to him several times while he was in the main area and further reported that the same dancer later exposed her breasts and genitals on several occasions during the course of three lap dances. Detective Tefft also reported that on October 21, 2001, a different dancer exposed her breasts and genitalia to him during a lap dance and that later that same evening, the same dancer again showed him her breasts and genitals while they were in a private room called the Champagne Room.
As a result of these allegations of violations of Ordinance 1057, the Town issued a notice of violation to Casa DiMario, Inc. and scheduled a show cause hearing for November 14, 2001, before the Johnston Town Council, sitting in its capacity as the Licensing Board. Casa DiMario, Inc. was informed that the status of its liquor and entertainment licenses would be considered at the hearing.
On November 13, 2001, the day before the scheduled show cause hearing, the Town held a hearing to consider the renewal of all alcoholic beverage licenses. The Town also held a hearing on that same day on the application of Andiross, Inc. for the transfer to it of the liquor license held by Casa DiMario, Inc. At the November 13, 2001 hearing, the Town conditionally renewed Casa DiMario, Inc.'s liquor license, subject to the outcome of the show cause hearing with respect to Casa DiMario, Inc.'s alleged violations that it had scheduled for the following evening. Additionally, the Town conditionally approved the transfer of the liquor license from Casa DiMario, Inc. to Andiross, Inc., subject to the outcome of the November 14, 2001 show cause hearing.
At the November 14, 2001 show cause hearing, the Town voted to revoke all of Casa DiMario, Inc.'s licenses, including its Alcoholic Beverage, Entertainment, Restaurant, and Sunday Sales Licenses and also voted to deny Andiross, Inc.'s application for the transfer to it of the liquor license from Casa DiMario, Inc. These actions (with regard to liquor license revocation and denial of the transfer of the liquor license) constitute the subject matter of the instant appeal.
On November 16, 2001, appellants Casa DiMario, Inc. and Andiross, Inc. appealed the Licensing Board's decision (with respect to liquor license revocation and denial of the transfer of the liquor license) to the DBR, and the DBR issued a stay of the revocation of the liquor license. The Town returned the liquor license to Andiross, Inc., but informed it that, without an entertainment license, live dancing was not allowed. Nevertheless, Andiross, Inc. continued to offer live entertainment. After the police ordered Mario's Showplace to cease offering adult entertainment, the appellants applied to the Superior Court for a restraining order to enjoin the Town from revoking Casa DiMario, Inc.'s entertainment license. The Superior Court hearing justice granted a temporary restraining order and then a preliminary injunction that allowed Mario's Showplace to continue to offer various types of entertainment, including female dancers performing in bikini bathing suits, pending a hearing on the merits.[7]
On December 10, 2001, a DBR hearing officer held a hearing regarding the revocation of the liquor license and denial of the transfer of that license. The DBR treated the appeal as a consolidated appeal by both Casa DiMario, Inc. and Andiross, Inc. Witnesses at the hearing included Detectives Albert Faella and Robert Tefft, who testified as to their observations of violations of Ordinance 1057 that they stated occurred within eyeshot of other employees of Mario's Showplace. Ann Marie Yepremian, 51% owner of Andiross, Inc., was also called as a witness. She testified as to various management policies regarding the operation of Mario's Showplace, including measures taken in an effort to ensure that Mario's Showplace complied with the law.
At the hearing, neither Casa DiMario, Inc. nor Andiross, Inc. denied that violations of Ordinance 1057 had occurred. They stated that the dancers who were alleged to have violated the Ordinance had been fired, as were those bouncers who should have observed the violations. Appellants argued, however, that the revocation of the liquor license and denial of its transfer were unjustified. They asserted that the hearing justice, during the Superior Court injunction hearing regarding the entertainment license, made findings that they should not be liable for the actions of their employees. Appellants thus argued that the doctrines of res judicata or collateral estoppel should be applied such that the liquor license revocation and denial of the liquor license transfer request should be reversed. Appellants further argued that even if they, as owners or operators, should be sanctioned, the Town was biased in imposing the harsh sanctions of liquor license revocation and denial of a transfer of such license. Finally, appellants argued that the sanctions should be reduced given Andiross, Inc.'s efforts to prevent problems in the club which included the hiring of a law enforcement official as head of security, the hiring of three house mothers and the installation of closed circuit televisions.
In response, the Town argued that res judicata and/or collateral estoppel did not apply as the injunction hearing was not a final judgment on the merits. The Town also contended that arguments made at an injunction hearing regarding the entertainment license have no bearing on a hearing held on an alcoholic beverage license. The Town further asserted that the Town was not biased and that the revocation sanction was properly imposed based upon Casa DiMario, Inc.'s past record and the severity of the present violations. The Town also argued that the Town's action in denying the liquor license transfer application was justified based upon the fact that Andiross, Inc. had allowed severe violations to occur.
On March 27, 2002, the DBR hearing officer, in a detailed and well-reasoned decision, upheld the Town's decision: (1) to revoke the liquor license held by Casa DiMario, Inc.; and (2) to deny any transfer of that license to Andiross, Inc. The hearing officer found that the doctrines of collateral estoppel and res judicata were not applicable since a preliminary injunction did not constitute a final judgment on the merits. The hearing officer also determined that, in the context of an alcoholic beverage license, the licensee is liable for violations by its employees regardless of whether the licensee had knowledge of their occurrence at the time. The hearing officer further found that, in light of Casa DiMario, Inc.'s past record, revocation was appropriate. Finally, the hearing officer held that even if there had been a separate hearing regarding the transfer, the same violations that justified the revocation of Casa DiMario, Inc.'s license would have justified the denial of the transfer. The Director of DBR adopted the decision of the hearing officer on March 29, 2002.
On April 1, 2002, appellants filed this timely appeal of the DBR's decision. They ask this Court to reverse or modify the DBR's decision. The Town counters that this Court should affirm the decision of the DBR.
 STANDARD OF REVIEW
Under Rhode Island law, local licensing authorities, such as the Town, possess the right, power, and jurisdiction to issue, renew, suspend or revoke, and transfer liquor licenses. All decisions of the issuing authority are reviewable de novo by the Director of the DBR. See R.I. Gen. Laws § 3-7-21. On appeal, the Superior Court may review decisions of the DBR under the Administrative Procedures Act, R.I. Gen. Laws § 42-35-15.See Sunny Day Restaurant, Inc. v. Beacon Restaurant, Inc.,103 R.I. 707, 708, 241 A.2d 295, 296 (R.I. 1968) (tracing avenue of appeals for liquor license applications). In the course of its review:
 [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 42-35-15(g).
When reviewing a decision under this statute, the Superior Court may not substitute its judgment for that of the DBR on questions of fact. See Johnston Ambulatory Surgical Ass'n,Inc. v. Nolan, 755 A.2d 799, 805 (R.I. 2000). Rather, the review of the Superior Court is limited to a determination of whether there is any legally competent evidence to support the DBR's decision. Barrington Sch. Comm. v. Rhode Island State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992). "Legally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Rhode IslandPublic Telecommunications Auth. v. Rhode Island State LaborRelations Bd., 650 A.2d 479, 485 (R.I. 1994). If such evidence is absent, the decision can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record. See Costa v. Registrar of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988). Furthermore, questions of law are not binding upon this Court and thus "may be freely reviewed to determine what the law is and its applicability to the facts." Carmody v. Rhode Island Conflict ofInterest Comm'n, 509 A.2d 453, 458 (R.I. 1986) (citations omitted).
 APPEAL OF THE DBR'S DECISION
Appellants Casa DiMario, Inc. and Andiross, Inc. argue in a one paragraph memorandum that the DBR's decision is contrary to the facts and the law. According to the appellants, the DBR hearing officer erred in that he did not follow the findings of fact made by the hearing justice in the Superior Court injunction hearing regarding the entertainment license, but rather made findings of fact contrary to that decision. In their cursory memorandum, the appellants do not allege any other errors in the decision below.
Notwithstanding these profound deficiencies in the appellants' legal memorandum, this Court first will consider the appellants' arguments regarding res judicata and collateral estoppel. This Court then will address whether the other determinations made by the DBR hearing officer are contrary to the evidence and the law.
 Res Judicata/Collateral Estoppel
The appellants' one paragraph brief does not elaborate on their contention that the DBR erred in making factual findings contrary to those embodied in the hearing justice's decision regarding the entertainment license. They appear to argue that the DBR hearing officer failed to apply the principles of res judicata or collateral estoppel to the hearing justice's comments, indicta, that the violations in question may not have been the responsibility of the appellants since there was no evidence that they had knowledge of the violations.
This Court finds that the DBR properly determined that any findings made in the course of the preliminary injunction hearing with respect to Casa DiMario, Inc.'s entertainment license did not bind it under principles of res judicata or collateral estoppel from making its own findings in the liquor license revocation and transfer proceedings. Our Supreme Court has held that the doctrine of res judicata serves as an "absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action." Gaudreau v. Blasbalg, 618 A.2d 1272, 1275 (R.I. 1993). The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." State v. Chase, 588 A.2d 120, 122 (R.I. 1991). Collateral estoppel is applicable where there is an identity of issues, the prior proceeding resulted in a final judgment on the merits, and the party against whom collateral estoppel is sought was the same party or in privity with the party in the prior proceeding. See id. The identity of issue requirement is divided into three parts: "first, the issue sought to be precluded must be identical to the issue decided in the prior proceeding; second, the issue must actually have been litigated; and third, the issue must necessarily have been decided." Id. at 123.
In juxtaposing the preliminary injunction proceeding with the hearing before DBR, it is evident that the issues in the two proceedings were distinct. The issue in the preliminary injunction hearing was the propriety of the Town's decision to revoke Casa DiMario, Inc.'s entertainment license and the hearing justice's consideration of that issue as a matter of equity. See R.I. Super. Ct. R. Civ. P. 65. The issues before DBR, however, concerned the propriety of the Town's decision to revoke Casa DiMario, Inc.'s liquor license and to deny the transfer of that license to Andiross, Inc. The latter issues, unlike the former issue, are specifically addressed by Rhode Island law, see R.I. Gen. Laws § 5-72-2, and involve de novo review of the Town's decision by DBR, see R.I. Gen. Laws § 3-7-21, and further review by this Court under the Administrative Procedures Act, R.I. Gen. Laws § 42-35-15.
While both proceedings considered evidence of Casa DiMario, Inc.'s unlawful offering of adult entertainment on the premises, the Court, in the preliminary injunction hearing, made no finding that the appellants did not violate state or local law in this regard. At most, the hearing justice, in dicta, commented that the violations in question may not have been the responsibility of the appellants since there was no evidence that they had knowledge of the violations. As such, even assuming an identity of issues, the issue of whether the appellants offered unlawful adult entertainment was not decided in the preliminary injunction hearing.
Moreover, the preliminary injunction hearing on the entertainment license did not constitute a final judgment on the merits. DiDonato v. Kennedy, 822 A.2d 179, 181 (R.I. 2003) (reaffirming that "the order of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo"). The hearing justice, in granting a preliminary injunction, did not issue a judgment on the merits, but rather made a determination that there was a likelihood of success on the merits. Id. The hearing justice was cognizant that the hearing did not constitute a judgment on the merits when he stated, at the conclusion of the hearing: "[w]e can have at some time, if you gentlemen agree upon, a full hearing on the merits if that is necessary." (Tr. of Nov. 27, 2001 Hearing).
Absent a final judgment or decision on the merits in the preliminary injunction hearing, the doctrine of res judicata cannot act to bar the license revocation proceeding nor can the doctrine of collateral estoppel preclude the DBR from deciding issues that arguably were addressed but not decided in the preliminary injunction hearing.[8] The DBR hearing officer did not err, therefore, in making his own independent findings of fact and conclusions of law.
 Liability of Casa DiMario, Inc.
Appellants next argue, without explication, that the decision of the hearing officer is "contrary to the facts and law." The DBR and the Town respond that the hearing officer's determination that Casa DiMario, Inc. was responsible for the violations of Ordinance 1057 did not constitute an error of law, as Rhode Island law provides that an alcoholic beverage licensee is responsible for all conduct that occurs within its establishment.
This Court affirms the hearing officer's determination that the licensee, Casa DiMario, Inc., is liable for the violations of Ordinance 1057. A liquor licensee is accountable for violations of the law which occur on his premises. Vitali v. Smith,105 R.I. 760, 762, 254 A.2d 766, 768 (R.I. 1969) (liquor licensee is "absolutely accountable for what happens on his premises"). Furthermore, it is not a defense that the licensee was not aware of the violation or provided supervision in an effort to prevent infractions of the law. Id.; Scialo v. Smith, 99 R.I. 738, 741, 210 A.2d 595, 598 (R.I. 1965) (finding no merit to the contention that "a licensee is not responsible for the conduct of his servant or agent, absent personal knowledge of that conduct").
In the instant case, there is ample evidence in the record to support the hearing officer's findings that violations of Ordinance 1057, including exposure of anal cleavage, anal cleft, the breast below the areola and genitalia, occurred while Casa DiMario, Inc. was the licensee. (Tr. of the Dec. 10, 2001 hearing before Jeffrey Greer at 63-73; 87-99). This Court further notes that neither Casa DiMario, Inc. nor Andiross, Inc. dispute that these violations occurred. (Tr. at 10-11; 182-184). Thus, the hearing officer's determination that Casa DiMario, Inc. was liable for those infractions is not contrary to the facts or the law.
 Revocation of Casa DiMario, Inc.'s License
As previously stated, the appellants' sole argument is that the decision of the hearing officer is "contrary to the facts and law." The DBR and the Town counter that the DBR's decision to affirm the revocation of Casa DiMario, Inc.'s license is supported by the evidence in the record and is not contrary to the law.
This Court upholds the hearing officer's affirmation of the revocation of Casa DiMario Inc.'s liquor license. The hearing officer, in affirming the revocation, noted DBR's guiding precept that "just sanctioning should reflect defensible values applied on a consistent basis." The hearing officer found that the revocation sanction reflected defensible values in that the present violations occurred less than one year after DBR imposed a sanction for previous violations of the Town's ordinance.[9] Furthermore, the hearing officer found that Casa DiMario, Inc. "irresponsibly" allowed Andiross, Inc. to operate under its license without proper, if any, supervision to ensure compliance with the law. The hearing officer also found that the present violations were severe. Finally, the hearing officer rejected the argument that the Town was biased and distinguished the violations in the instant case from those violations that occurred at an establishment called Tuxedos. The hearing officer noted that the violations at Tuxedos, which resulted in a one week suspension, were not as severe as the violations in the instant case, as the violations at Tuxedos consisted of an isolated or brief display of the pubic area (that was usually covered) to solicit a tip in the G-string.
This Court notes that as long as the imposed sanction is permitted by law, the Superior Court is not permitted to decide whether an agency chose the appropriate sanction. See Rochav. State PUC, 694 A.2d 722, 726 (R.I. 1997). Rather, this Court is limited to determining whether there is competent evidence to support the agency's finding. Id.
Section 3-5-21(a) of the Rhode Island General Laws provides:
 Every license is subject to revocation or suspension and a licensee is subject to fine by the board, body or official issuing the license, or by the department or by the division of taxation, on its own motion, for breach by the holder of the license of the conditions on which it was issued or for violation by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section.
In the instant case, the appellants do not dispute, and the evidence in the record supports a finding that, violations of the Town's nudity ordinance occurred (including exposure of anal cleft, anal cleavage, the breast below the areola, and genitalia). (Tr. at 10-11; 182-184; 63-73; 87-99.) Furthermore, this Court has determined that Casa DiMario, Inc. was liable for these violations of Ordinance 1057. Thus, since Casa DiMario, Inc. was liable for this violation, the Town had the authority, pursuant to R.I. Gen. Laws § 3-5-21(a), to revoke Casa DiMario Inc.'s license. Furthermore, as noted by the hearing officer, the instant violations occurred less than one year after the DBR imposed sanctions on Casa DiMario, Inc. for showing totally nude entertainment on a nightly basis in violation of the Town's nudity ordinance. Hence, this Court finds that there is evidence in the record to support the hearing officer's affirmation of the revocation, that the hearing officer's decision was not arbitrary or capricious, and that it was not contrary to the law.
 Denial of Andiross Inc.'s Transfer Application
As stated previously, the appellants argue in their one paragraph memorandum that the decision of the hearing officer is "contrary to the facts and law." The DBR and the Town counter that there is evidence in the record to support the hearing officer's decision to affirm the denial of Andiross, Inc.'s transfer application and that his decision is not contrary to the law.
The hearing officer found that the Town's revocation of Casa DiMario, Inc.'s license rendered the transfer question moot because, once the license was revoked, there was not a license to transfer. This Court notes that a transferee can take no more than a transferor can give. Vitali v. Smith, 105 R.I. 760, 762,254 A.2d 766, 768 (R.I. 1969). Thus, in the instant case, where Casa DiMario, Inc.'s license was revoked properly, there was no license to transfer to Andiross, Inc.
The hearing officer further determined that even if, after the violation/show cause hearing, the Town had held a hearing on the transfer application, the same violations that justified revoking Casa DiMario, Inc.'s license would have justified the denial of the transfer of the license. Based on the testimony of the officers and his own personal viewing of the premises, the hearing officer found that Andiross, Inc. either intentionally allowed these violations to occur or that there was a negligent lack of supervision of activity on the premises. The hearing officer determined that based upon either Andiross, Inc.'s intentional misconduct or negligent supervision in allowing the violations to occur, the Town was justified in doubting whether Andiross, Inc. would be capable of operating Mario's Showplace in compliance with the law in the future and thus was justified further in denying the transfer application.
This Court notes that the standard for approving the transfer of a license is the same as the standard for granting a liquor license. See R.I. Gen. Laws § 3-5-19; Manoogian v.Williamson, 89 R.I. 426, 430, 153 A.2d 165, 168 (R.I. 1959) (holding that "[a]n application for transfer should be dealt with as if it were an original application"). The standard applicable to the issuance of a liquor license differs from the standard applicable to the suspension, revocation, or renewal of a liquor license. A license may be revoked or suspended only where a condition of issuance has been violated or an applicable rule, regulation, or law has been violated; and the licensing board is entitled to deny renewal only where there is cause. R.I. Gen. Laws §§ 3-5-21, 3-5-23, 3-7-6. When considering an original application for a liquor license, however, the licensing board has broad discretion to determine whether to grant or deny the application. See Board of Police Comm'rs v. Reynolds,86 R.I. 172, 176-77, 133 A.2d 737, 740-41 (R.I. 1957).
In the instant case, the appellants do not dispute, and the evidence in the record supports a finding, that violations of the Town's nudity ordinance occurred while Mario's Showplace was operated by Andiross, Inc. (namely, exposure of anal cleft, anal cleavage, the breast below the areola and genitalia). (Tr. at 10-11; 182-184; 63-73; 87-99). Furthermore, the officers testified that several of the violations occurred within "eyeshot" of other Mario's Showplace employees. Thus, there is evidence in the record to support the hearing officer's determination that Andiross, Inc. either intentionally allowed the violations to occur or was negligent in its supervision. Hence, the record supports the hearing officer's affirmation of the denial of the transfer regardless of whether the transfer application is considered under the original application standard that affords broad discretion to the Town or the more stringent revocation/suspension standard which requires evidence that there has been a violation. As previously stated, where there is evidence in the record to support the action of an agency, and the action is not arbitrary or capricious, this Court will not substitute its judgment for that of the agency or reverse the decision of the agency. See Rocha v. State PUC, 694 A.2d 722, 726 (R.I. 1997). Thus, this Court upholds the DBR's decision to affirm the Town's denial of the transfer application.
 CONCLUSION
After review of the entire record, this Court affirms the decision of the DBR which upheld the Town of Johnston's decision: (1) to revoke the liquor license held by Casa DiMario, Inc.; and (2) to deny any transfer of that license to Andiross, Inc. This Court finds that the decision is not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; is not arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; and is not affected by error of law.
Counsel shall confer and submit forthwith for entry an agreed upon form of order and judgment consistent with this decision.
[1] A Class BV Full Liquor license allows food and alcohol to be sold.
[2] Ordinance 965 provides:
 A. It shall be unlawful for any person maintaining, owning, or operating a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises to suffer or permit:
 1. Any female person, while on the premises of the commercial establishment, to expose to the public view that area of the female breast at or below the areola thereof.
 2. Any female person, while on the premises of the commercial establishment, to employ any devise or covering which is intended to give the appearance of or simulate such portions of the female breast as described in subsection A.1. above.
 3. Any person, while on the premises of the commercial establishment, to expose to the public view his or her genitals, pubic area, anus, anal cleavage, or anal cleft.
 4. Any person, while on the premises of the commercial establishment, to employ any devise or covering which is intended to give the appearance of or simulate the genitals, pubic area, anus, anal cleavage, or anal cleft.
 B. It shall be unlawful for any female person, while on the premises of a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises, to expose to the public view that area of the female breast at or below the areola thereof or to employ any devise or covering which is intended to give the appearance of or simulate such portions of the female breast as described herein.
 C. It shall be unlawful for any person, while on the premises of a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises, to expose to the public view his or her genitals, pubic area, anus, anal cleavage, or anal cleft, or to employ any devise or covering which is intended to give the appearance of or simulate the genitals, pubic area, anus, anal cleavage, or anal cleft.
 D. A violation of said ordinance by the owner or operator of a business licensed to sell alcoholic beverages shall be punishable by a fine not to exceed ($500.00) for the first offense and/or the suspension or revocation of said liquor license. Any subsequent violation within three years after a conviction for the same or similar violation shall be punishable by a fine not to exceed ($1,000.00) and/or the suspension or revocation of said liquor license.
 E. A violation of this ordinance by a person other than an owner or operator of the licensed premises shall be punishable by a fine not to exceed ($500.00) for the first offense and by a fine not to exceed ($1,000.00) for any subsequent violation within three (3) years after a conviction for the same or similar violation.
 F. The invalidity of any section or sections of this ordinance shall not affect the validity of the remainder of the ordinance.
 This ordinance shall take effect upon passage and all ordinances and parts of ordinances inconsistent herewith are hereby repealed.
[3] The statute, as amended, reads as follows: "Notwithstanding any provision of this chapter or in the Rhode Island general laws to the contrary, in the case of any city or town which issues any retailer's Class B license this city or town may restrict or prohibit entertainment at these licensed facilities, provided that any restriction(s) or prohibition applies uniformly to all of these licensed facilities." R.I. Gen. Laws § 3-7-7.3 (as amended, 1997).
[4] Subsequent to the Town's enactment of Ordinance 1057, the Rhode Island Supreme Court ruled that the Town did have the power to enact Ordinance 965. See El Marocco Club, Inc. v.Richardson, 746 A.2d 1228 (R.I. 2000).
[5] See n. 3, supra.
[6] The statute reads:
 It is unlawful of any person maintaining, owning, or operating a commercial establishment located within the Town of Johnston, at which alcoholic beverages are offered for sale or consumption on the premises, to, without a license pursuant to § 5-72-2:
 (1) Suffer or permit any female person, while on the premises of the commercial establishment, to expose to the public view that area of the human breast at or below the areola.
 (2) Suffer or permit any female person, while on the premises of the commercial establishment to employ any device or covering which is intended to give the appearance of or simulate the portions of the human female breast as described in subsection (a)(1).
 (3) Suffer or permit any person, while on the premises of the commercial establishment to expose to public view his or her genitals or pubic area.
 (4) Suffer or permit any person, while on the premises of the commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate the genitals or pubic area.
R.I. Gen. Laws § 5-72-1 (1)-(4) The statute further provides:
 (a) The town council of the town of Johnston, in addition to the licensing and regulatory powers enumerated in this title, has the power to license any establishment where nudity is permitted on the premises and alcoholic beverages are offered for sale or consumption on the premises.
 (b) The town council has the power to limit the hours of operation of any such establishment and may designate specific areas within the town of Johnston where nudity on the premises where alcoholic beverages are offered for sale or consumption on the premises may be permitted and/or to prohibit the operation of any new establishment.
R.I. Gen. Laws § 5-72-2(a)(b). The statute also states:
 If the owner, operator, licensee lessor, lessee, manager, employee or any other person participating in the operation of an establishment located within the town of Johnston at which alcoholic beverages are offered for sale for consumption on the premises violates or is in violation of any of the provisions of this section, the town council may revoke the license for the establishment after giving reasonable notice to the holder of the license and affording the holder an opportunity to be heard as to why the revocation should not be issued.
R.I. Gen. Laws § 5-73-3.
[7] This Court reviewed the record of that proceeding as part of its consideration of this appeal.
[8] This Court is mindful that the appellants, during the course of their res judicata/collateral estoppel argument before the hearing officer, asserted that the hearing justice had indicated that R.I. Gen. Laws § 5-72-1 may have preempted Ordinance 1057. The appellants thus urged the hearing officer to apply the principles of res judicata or collateral estoppel to this statement. However, for the same reasons set forth in the body of this decision, this Court notes that the principles of res judicata/collateral estoppel are not applicable to the statements made by the hearing justice regarding preemption. This Court further notes that the hearing officer did not address the issue of preemption in his decision. Appellants have neither argued to this Court that the hearing officer erred by failing to consider the preemption issue, nor have appellants argued that R.I. Gen. Laws § 5-72-1 preempts Ordinance 1057. Thus, the substantive issue of preemption is not before this Court.
[9] In early 1999, Casa DiMario Inc. intentionally violated the Town's ordinance for close to two months by permitting totally nude dancing on a nightly basis. In that case, the DBR reduced the one-year revocation imposed by the Town to a 53-day suspension.